IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA )
)  No. 3:26-CR-00031
v. )
)  CHIEF JUDGE CAMPBELL
HELEN BOERMAN, O.D. )

<u>PLEA AGREEMENT</u>

The United States of America, through Braden H. Boucek, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney Sarah K. Bogni, and defendant, HELEN BOERMAN, through defendant's counsel, Benton Curtis, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

<u>Charges and Penalties in This Case</u>

1.  Defendant acknowledges that she has been charged in the Information in this case, under Title 18, United States Code, Section 287, with making criminal false claims against the United States. If convicted on the sole count in the Information, the defendant faces the following maximum penalties: up to five years' imprisonment, up to a $250,000 fine, and supervised release of up to 3 years.

2.  As a result of the defendant's offense, the defendant is subject to forfeiture of property as alleged in the Information.

3.  The defendant must pay upon conviction a $100 special assessment for the single felony count to which the defendant pleads guilty, pursuant to Title 18, United States Code, Section 3013.

4. As part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order the defendant to pay restitution to any victim of the offense, as required by law.

5. Defendant has read the charge against defendant contained in the Information. That charge has been fully explained to the defendant by the defendant's attorney. The defendant fully understands the nature and elements of the crime with which the defendant has been charged.

<u>Charge to Which Defendant is Pleading Guilty</u>

6. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the Information. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

<u>Factual Basis</u>

7. Defendant will plead guilty because the defendant is in fact guilty of the charge contained in the Information. In pleading guilty, defendant admits the following facts and that those facts establish defendant's guilt beyond a reasonable doubt:

From in or about February 2021 and through a course of continuing conduct through on or about October 2024, in the Middle District of Tennessee, the defendant HELEN BOERMAN, O.D. ("BOERMAN") knowingly and intentionally presented and caused to be presented false, fictitious, and fraudulent claims to Medicare for reimbursement, knowing the claims were false, fictitious, and fraudulent, and in violation of Title 18, United States Code, Section 287. Medicare is a health care benefit program affecting commerce and is administered by the U.S. Department of Health and Human Services, through its federal agency Centers for Medicare and Medicaid Services ("CMS").

BOERMAN, an optometric physician, owned and operated Brentwood Eye Care, LLC ("BEC"), an optometric practice located in Nashville, Tennessee. BOERMAN, individually and through BEC, was an enrolled provider in Medicare. As an enrolled provider, BOERMAN repeatedly signed certifications, swearing that she would abide by the rules of the Medicare program and that she would not submit false, fictitious, or fraudulent claims to Medicare. BOERMAN knew that Medicare relied on the honesty of its enrolled providers to accurately represent services on claims submitted to Medicare for payment. As BOERMAN knew,

2

Medicare would not reimburse for medically unnecessary services or for claims that were not actually provided as represented on claims for payment.

Between February 2021 and October 2024, BOERMAN submitted and caused to be submitted, claims to Medicare for billing code 65778, which is defined as, "Placement of amniotic membrane on the ocular surface; without sutures" (hereinafter, amniotic membrane grafts, or "AMG"). AMG is a wound care product manufactured from human placenta. In order to obtain higher reimbursement from Medicare than she was entitled to, between February 2021 and May 2023, BOERMAN directed her staff to claim that BOERMAN and BEC performed AMG on different dates of service, knowing that was not true. Between approximately February 2021 and October 2024, BOERMAN split grafts between eyes or between patients, when she knew the grafts were single use, single eye products. As a result, she submitted claims for payment to Medicare by representing she utilized more AMG on patients than she had actually purchased from the AMG distributors. To justify false claims, BOERMAN directed BEC staff to create false medical records that made it appear patients received AMG services at BEC on dates that they, in fact, had not.

For example, in May 2022, BOERMAN, through BEC, submitted claims to Medicare for AMG on behalf of two patients and Medicare beneficiaries on May 20, 23, 24, 25, 26, and 27 when BEC's appointment data showed that the patients had appointments on May 20, 24 and 27 only. The patients were in fact patients of BOERMAN and did receive AMG services during the duration of their course of treatment on dates for which they had actual appointments. No AMG occurred on May 23, 25 and 26 and the claims are false and fraudulent. BEC billed $9,000 and Medicare paid BEC $6,000 for the billed AMG on those false dates of service. Staff of BEC created false medical records for the patients, at the direction of BOERMAN. In addition to submitting false claims for fictious dates of service for AMG, BOERMAN's medical records list the same serial number for the claimed grafts for the patients, meaning BOERMAN split a single use graft, despite billing Medicare as if the AMG was a new graft for each AMG claim.

BOERMAN acknowledges that for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines (hereinafter "U.S.S.G."), the following conduct, to which the defendant stipulates, constitutes relevant conduct under U.S.S.G. § 1B1.3: false claims dating to March 2020 and through October 2024 for AMG claims submitted to Medicare, TennCare, Tennessee's Medicaid agency, and Federal Employees Health Benefits Programs. BOERMAN admits that during the course of her conduct, BOERMAN, through BEC, submitted, or caused to be submitted, false claims in the amount of approximately $11 million, and received approximately $6.9 million. As defendant knew, BEC was not entitled to receive reimbursement for these claims because the claims were false, fictitious, and fraudulent.

3

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

<u>Acknowledgements and Waivers Regarding Plea of Guilty: Trial Rights</u>

8.      Defendant understands that by pleading guilty defendant surrenders certain trial rights, including the following:

a.      If defendant persisted in a plea of not guilty to the charge against defendant, defendant would have the right to a public and speedy trial. The defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b.      If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and the defendant's attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. At trial, the jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charge beyond a reasonable doubt; and that it must consider each count of the Information against the defendant separately.

c.      If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of the defendant's guilt beyond a reasonable doubt.

4

d.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and defendant's attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on the defendant's own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.      At a trial, the defendant would have the right not to testify, and no inference of guilt could be drawn from defendant's refusal to testify.

9.      The defendant understands that by pleading guilty the defendant is waiving all of the trial rights set forth in the prior paragraph. The defendant's attorney has explained those rights to defendant, and the consequences of the defendant's waiver of those rights, to the defendant.

<u>Sentencing Guidelines Calculations</u>

10.     The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), in determining the defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

11.     For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree to recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

a.      <u>Offense Level Calculations.</u>

i.      The base offense level for the counts of conviction is 6, pursuant to U.S.S.G. § 2B1.1(a).

ii.     The parties agree that that loss involved in the offense was at least greater than $6,500, so an upward adjustment under U.S.S.G. § 2B1.1(b)(1) will

5

apply. The parties agree that the base offense level is increased by 20 levels because the amount of loss under U.S.S.G. § 2B1.1(b)(1)(K) is greater than $9,500,000 million, but less than $25,000,000 million.

iii. The parties agree that, pursuant to this plea agreement, the defendant will be convicted of a Federal health care offense, as referenced in U.S.S.G. § 2B1.1(b)(7). Because the loss to the Government health care program is greater than $1,000,000, an upward adjustment under U.S.S.G. § 2B1.1(b)(7) will apply and increase the base offense level by 2 levels.

iv. The parties agree that the offense level should be increased by 2 levels pursuant to U.S.S.G. § 3B1.3 because defendant abused a position of trust.

v. The parties agree that the offense level should be reduced by 2 levels pursuant to U.S.S.G. § 4C1.1 because defendant is a zero-point offender.

vi. Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through defendant's allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

vii. The parties agree that no additional upward or downward adjustments are appropriate.

viii.     The defendant acknowledges that if the Court does not accept the U.S.S.G. recommendations of the parties, the defendant will have no right to withdraw the defendant's guilty plea.

ix.     In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments or calculations different from those recommended or agreed upon above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

Therefore, assuming that the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the government, the parties agree to recommend to the Court, pursuant to Rule 11(c)(1)(B) that the defendant's final offense level is 25 (the "Recommended Offense Level").

b.     Criminal History Category.

i.     The parties have no agreement about the defendant's Criminal History Category but the parties believe defendant is a zero-point offender.

c.     Recommended Guidelines Range.

i.     The Recommended Offense Level, when combined with the defendant's predicted Criminal History Category, results in a recommended advisory guidelines range of 57 to 71 months of imprisonment. However, there is a statutory maximum of 60 months so the range cannot exceed 60 months (the "Recommended Guidelines Range").

12.     The defendant understands that the offense level as ultimately determined by the Court (the "Court-determined Offense Level") may be different than the Recommended Offense Level. The defendant likewise understands that the recommended advisory guidelines range as

7

ultimately determined by the Court (the "Court-determined guidelines range") will be based on the Court-determined Offense Level and the Court's determination of the defendant's Criminal History Category.

13.     The defendant is aware that any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. The defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculation, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon any estimate of the offense level or guidelines range that the defendant may have received from the defendant's counsel, the United States, or the Probation Office. The defendant further acknowledges that, to the extent the parties have recommended guidelines calculations in this plea agreement, the defendant will have no right to withdraw from the plea agreement if the Court does not accept these recommended guidelines calculations.

Agreements Relating to Sentencing

14.     Sentencing Recommendation. This Plea Agreement is governed in part by Federal Rule of Criminal Procedure 11(c)(1)(B). That is, the United States agrees to recommend no more than 48 months' imprisonment. Defendant is free to recommend whatever sentence defendant deems appropriate. The defendant understands that the defendant's request is not binding on the Court and, after considering the defendant's Sentencing Guidelines, the Court may impose the maximum penalties set forth above. The defendant understands further that the defendant will not

8

be permitted to withdraw the defendant's guilty plea if the Court does not adopt the defendant's request. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and accept the plea agreement and enter an order reflecting the acceptance of both the plea and this plea agreement.

Restitution and Fines

15. Restitution. The parties acknowledge that restitution is owed to Medicare, TennCare, and United States Office of Personnel Management (Federal Employees Health Benefit Programs) in the amount of approximately $6,970,583.50. Pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make restitution in the amount of approximately $6,970,583.50, minus any credit for funds repaid prior to sentencing.

16. Pursuant to Title 18, United States Code, Section 3572, all monetary penalties, including restitution imposed by the Court, shall be due and payable immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the defendant is unable to pay immediately, then the defendant agrees to the imposition of a schedule of payments established at sentencing. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce a judgment.

17. The defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which the defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

9

Forfeiture

18. The Forfeiture Allegation of the Information put the defendant on notice that upon conviction of the charge contained in the Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7). By entry of a guilty plea to the Information, defendant acknowledges that the certain property is subject to forfeiture and that defendant has had an opportunity to be heard on this matter.

19. The defendant waives any defect in or failure of notice in the charging instrument, inclusion in the judgment, and any other procedural requirements of Fed. R. Crim P. 32.2.

20. In the event of a forfeiture money judgment entered by the Court at or prior to sentencing, the parties agree that the payments toward single damages paid to the government in a parallel civil False Claims Act resolution in this District shall be credited against any forfeiture or restitution liability imposed upon the defendant in this matter. No other payments whether in the form of penalties, multipliers, or interest in the parallel civil action or any other government action not specifically referenced shall be entitled to setoff or credit.

21. The defendant will cooperate with the United States in all forfeiture-related matters. This cooperation will include, but not be limited to: (a) truthful testimony; (b) consent to discovery concerning property involved in the offense and the defendant's assets; (c) execution of documents required to effect this agreement, including transfers of substitute assets; (d) the production or release of tax information, returns, or other financial documents concerning the defendant; and (e) repatriation of any proceeds of the offense held outside the United States.

10

22.    Unless otherwise specifically agreed, the defendant relinquishes all claims or disputes in any administrative or civil forfeiture proceeding arising from the facts and circumstances at issue in the criminal case.

23.    The U.S. Probation and Pretrial Services Office may release the Presentence Investigative Report to the Asset Forfeiture Unit of the United States Attorney's Office.

24.    Forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose. The United States will seek approval from the Money Laundering, Narcotics and Forfeiture Section of the U.S. Department of Justice ("MNF") via the processes outlined at 28 C.F.R. § 9 and Title 18, United States Code, Section 3664, for any forfeiture payment to be credited toward any restitution obligation imposed in this matter. However, the ultimate discretion to grant or deny such requests lies with MNF.

<u>Presentence Investigation Report/Post-Sentence Supervision</u>

25.    The defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Presentence Investigation Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charges against the defendant, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

26.    The defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of the defendant's financial circumstances, including the defendant's recent income tax returns as specified by the Probation Office. The defendant understands that providing false or

11

incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of the defendant's sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

Consequences of Certain Convictions: Financial Crimes

27. The defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest, or penalties from the defendant or the defendant's partnership or corporations.

28. The defendant agrees to cooperate with the IRS in any tax examination or audit of the defendant and the defendant's spouse and the defendant's partnerships or corporations that directly or indirectly relates to or arises out of the course of conduct the defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request. Nothing in this paragraph precludes the defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

Waiver of Appellate Rights

29. Regarding the issue of guilt, the defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether the defendant is guilty of the crime(s) to which the defendant is agreeing to plead guilty; and (ii) trial rights that might have been available if the defendant had exercised the right to go to trial. Regarding sentencing, the defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within or below the Court-determined guidelines range. The defendant further waives all appellate rights

12

and collateral attacks concerning forfeiture and all matters related thereto. The defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the Court-determined guidelines range; or (ii) below such guidelines range if the government has moved for a downward departure pursuant to U.S.S.G. § 5K1.1.

Other Terms

30.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against the defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, including Immigration and Customs Enforcement, except as expressly set forth in this Plea Agreement.

31.     Should the defendant engage in additional criminal activity after the defendant has pled guilty but prior to sentencing, the defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

13

Conclusion

32.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and the defendant regarding the defendant's criminal liability in Case No. 3:26-CR-00031.

33.     The defendant and the defendant's attorney acknowledge that no threats have been made to cause the defendant to plead guilty.

34.     No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

35.     The defendant understands that the Information and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

36.     The defendant understands that the defendant's compliance with each part of this Plea Agreement extends until such time as the defendant is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. The defendant further understands that in the event the defendant violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or may require the defendant's specific performance of this Plea Agreement. The defendant understands and agrees that in the event that the Court permits the defendant to withdraw from this Plea Agreement, or the defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against the

14

defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

37.    Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Information. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.


Date:  5·5·2026

_____
HELEN BOERMAN, O.D.
Defendant


15

38. <u>Defense Counsel Signature:</u> I am counsel for the defendant in this case. I have fully explained to defendant the defendant's rights with respect to the pending Information. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 05/05/26

BENTON CURTIS
Attorney for Defendant Helen Boerman

Respectfully submitted,

BRADEN H. BOUCEK
United States Attorney
Middle District of Tennessee

By: _____
SARAH K. BOGNI
Assistant U.S. Attorney

By: _____
AHMED SAFEEULLAH
Criminal Chief

16